MARGARET SHERMAN *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* FIELD CLINIC *et al.*, Defendants-Appellees and Cross-Appellants.— (MARSHALL FIELD, M.D., d/b/a Field Clinic, *et al.*, Defendants.)

First District (2nd Division)    No. 78-1578

Opinion filed June 19, 1979.—Rehearing denied July 16, 1979.

22

Julian N. Henriques, Jr., Thomas Johnson, and Helen Cropper, all of Legal Assistance Foundation, of Chicago, for appellants.

Taylor, Miller, Magner, Sprowl & Hutchings, of Chicago (Ralph W. F. Lustgarten and Michael F. Healy, of counsel), for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, Margaret Sherman, Raymond M. Sherman, Jr., and Deborah Billy, Margaret Sherman's minor daughter, brought this action in the circuit court of Cook County seeking recovery for damages allegedly arising out of attempts made by defendant Collection Accounts Terminal, Inc. (CAT), to collect a debt purportedly owed by plaintiffs to defendants Field Clinic and Raymond F. Cunningham, M.D., doing business as Field Clinic (the Clinic). Count I of the complaint alleged intentional infliction of severe emotional distress and sought compensatory damages, while count II alleged violation of the Collection Agency Act (now Ill. Rev. Stat. 1977, ch. 111, par. 2001 *et seq.*) and sought compensatory and punitive damages.

The issues are: (1) whether the trial court erred in dismissing the complaint as to the Clinic on the grounds that (a) CAT was an independent contractor and not an agent of the Clinic and (b) the acts alleged were beyond the scope of any agency relationship between the two; (2) whether the complaint states a cause of action for intentional infliction of severe emotional distress; (3) whether the complaint states a cause of action under the Collection Agency Act; and (4) whether the prayer for punitive damages under the Collection Agency Act was properly not stricken.

Plaintiffs' complaint in two counts, filed in conjunction with a jury demand, made the following allegations. Plaintiffs are members of a family who reside together. CAT is a collection agency which served as the agent of the Clinic for the collection of an account in the amount of $170 purportedly owed to the Clinic for medical care administered to plaintiff Margaret Sherman. During the period beginning on or about September 13, 1977, and ending on or about November 22, 1977, CAT, as the agent of the Clinic, engaged in severe harassment of plaintiffs in an attempt to collect on the account owed to the Clinic. The acts committed by CAT or its agent included the following: telephoning plaintiffs' residence 10-20 times per day 3 days per week and 5-6 times per day 2 other days per week; sending numerous letters to plaintiffs' residence; making numerous telephone calls to Mr. Sherman at his place of business, though only Mrs. Sherman was responsible for any debts due the Clinic; threatening to

"embarrass" Mr. Sherman by contacting his employers and co-workers; threatening to garnish half of Mr. Sherman's wages; frequently using profane and obscene language in calls to Mr. Sherman; calling and speaking to Mrs. Sherman's 15-year-old daughter, plaintiff Deborah Billy, in connection with the debt, though only Mrs. Sherman was responsible for any debts due the Clinic; frequently making threats to the daughter that Mr. and Mrs. Sherman would be sent to jail for not paying the bill; and frequently using abusive language in calls to Mrs. Sherman. Plaintiffs alleged that this extreme and outrageous conduct was wanton, malicious, and oppressive, and was intended to inflict, and did inflict, severe mental and emotional distress on the plaintiffs, wherefore plaintiffs sought compensatory damages from CAT and the Clinic.

Count II of plaintiffs' complaint realleged the above allegations. Plaintiffs then alleged the following: that CAT is a collection agency within the meaning of sections 2.02 and 2.03 of the Collection Agency Act (now Ill. Rev. Stat. 1977, ch. 111, pars. 2004 and 2005); that the conduct performed by CAT as the agent of the Clinic violated sections 9, 9.02, 9.05, 9.06, 9.07, 9.08, and 9.10 of the Collection Agency Act (now Ill. Rev. Stat. 1977, ch. 111, pars. 2012, 2014, 2017, 2018, 2019, 2020, and 2022); and that as a result of these violations, plaintiffs experienced mental and emotional distress, wherefore plaintiffs sought compensatory and punitive damages against CAT and the Clinic.

CAT filed an answer to the complaint, admitting that it acted as the Clinic's agent in attempting to collect on the account and admitting that it was a collection agency within the meaning of the Collection Agency Act, but otherwise denying the allegations of the complaint. The Clinic, however, filed a motion to dismiss the complaint as substantially insufficient in law in the following particulars: first, that neither count of the complaint stated a cause of action; second, that the only basis for liability alleged against the Clinic was that CAT acted as the Clinic's agent in attempting to collect on the account, and the mere allegation of an agency relationship was insufficient to state a cause of action for vicarious liability; third, that a credit agency is an independent contractor and therefore the Clinic cannot be liable for the torts of CAT; and fourth, that count II fails to state a cause of action against the Clinic because the Collection Agency Act does not provide for a private or civil right of action, applies only to collection agencies, and does not authorize punitive damages.

Acting on this motion, the trial court dismissed both counts of the complaint as to the Clinic on the grounds that CAT was an independent contractor and not an agent of the Clinic, and that the tortious acts alleged were beyond the scope of their agency relationship. Plaintiffs appeal from this portion of the trial court's order. The trial court also held that count I of the complaint stated a cause of action against CAT for intentional infliction

of severe emotional distress, that count II stated a cause of action against CAT for violation of the Collection Agency Act, and that the prayer for punitive damages in count II was proper and should not be stricken. The Clinic cross-appeals from these portions of the order insofar as they may affect the Clinic.

■■ ■ The threshold issue is whether the trial court erred in dismissing plaintiffs' complaint as to the Clinic on the grounds that CAT was an independent contractor and the acts allegedly committed by CAT were beyond the scope of any agency relationship between CAT and the Clinic. Unless the parties' relationship is so clear as to be undisputed, questions such as the existence and scope of an agency relationship are questions of fact, to be decided by the trier of fact (*Yuhas v. Allis-Chalmers Distribution Service Corp.* (1973), 12 Ill. App. 3d 814, 821, 299 N.E.2d 166; *Hulke v. International Manufacturing Co.* (1957), 14 Ill. App. 2d 5, 32-33, 142 N.E.2d 717). Resolution of these questions necessarily depends upon such facts as the right of the principal to control the acts of the agent (*Reith v. General Telephone Co.* (1974), 22 Ill. App. 3d 337, 339-40, 317 N.E.2d 369; *Yuhas; Dumas v. Lloyd* (1972), 6 Ill. App. 3d 1026, 1029-30, 286 N.E.2d 566; *Hulke*), the ability of the agent to enter into binding negotiations on behalf of the principal (*Hoffman & Morton Co. v. American Insurance Co.* (1962), 35 Ill. App. 2d 97, 181 N.E.2d 821), and the extent to which the tortious conduct alleged was committed in the course of and in furtherance of the principal's business. (*E.g., Bremen State Bank v. Hartford Accident & Indemnity Co.* (7th Cir. 1970), 427 F.2d 425, 428.) To require plaintiffs, without benefit of discovery, to include in their complaint sufficient factual detail to permit a determination of these questions from the face of the complaint is both unrealistic and unnecessary. See Laycock, *Dispositive Pre-Trial Motions in Illinois—Sections 45, 48 and 57 of the Civil Practice Act,* 9 Loy. Chi. L.J. 823, 834-35 (1978).

■■ ■ Section 33(3) of the Civil Practice Act provides that "[p]leadings shall be liberally construed with a view to doing substantial justice between the parties" (Ill. Rev. Stat. 1977, ch. 110, par. 33(3)); section 42(2) provides that "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." (Ill. Rev. Stat. 1977, ch. 110, par. 42(2).) These rules apply when considering motions to strike or dismiss (*e.g., Highway Insurance Co. v. Korman* (1963), 40 Ill. App. 2d 439, 442-43, 190 N.E.2d 124), and thus, if on the facts alleged and all reasonable inferences that may be drawn therefrom, there is demonstrated any possibility of recovery, the action should not be dismissed. (*Bureau of Credit Control v. Scott* (1976), 36 Ill. App. 3d 1006, 1007, 345 N.E.2d 37.) Accordingly, the allegation that a tortious act was done on the alleged principal's behalf has been held sufficient to

withstand a motion to dismiss. (*E.g., Highway Insurance Co. v. Korman* (1963), 40 Ill. App. 2d 439, 446-47, 190 N.E.2d 124.) Similarly, in the instant case, plaintiffs' allegation that CAT committed the allegedly tortious acts while acting as the agent of the Clinic and in an attempt to collect a debt on behalf of the Clinic was sufficient to establish the Clinic's possible vicarious liability. Therefore, the Clinic's motion to dismiss, which addressed itself solely to the legal sufficiency of the complaint (*e.g., Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 586, 325 N.E.2d 799), should not have been granted on this basis.

We note that the Clinic's motion to dismiss, though unlabeled, challenged only the sufficiency of the complaint in law, and therefore was a motion pursuant to section 45 of the Civil Practice Act. (*Cain v. American National Bank & Trust Co.*) In *Dixon v. Ford Motor Credit Corp.* (1979), 72 Ill. App. 3d 983, 391 N.E.2d 493, recently decided by this court, the question was raised as to whether the existence of an agency relationship was an issue properly raised on a motion to dismiss under section 48(1)(i) (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i)), relating to other affirmative matter barring the claim asserted against a defendant. However, because we found that in any event a wrongful act had not been alleged, we found it unnecessary to decide the question. For a different reason, we find that we need not decide it here. Even if the nonexistence of an agency relation is properly raised on such a motion, under the circumstances it would be a ground not appearing on the face of the pleading and which, therefore, must be supported by affidavit. (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i).) Unlike the alleged principal in *Dixon,* the Clinic has submitted no affidavits in support of its motion, and therefore the motion fails as a section 48 motion as well as a section 45 motion. See *Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 373 N.E.2d 645.

■■ The Clinic attempts to argue that as a matter of law, collection agencies are always independent contractors, but of the cases cited by the Clinic in support of this position, the arguably closest case itself demonstrates that the question, as we have stated, is one of fact. (See *Lynch Jewelry Co. v. Bass* (1929), 220 Ala. 96, 124 So. 222.) The Clinic also argues that as a matter of law, intentional infliction of severe emotional distress is outside the scope of employment, citing *Rosenberg v. Packerland Packing Co.* (1977), 55 Ill. App. 3d 959, 370 N.E.2d 1235, and *Nelson v. Nuccio* (1971), 131 Ill. App. 2d 261, 268 N.E.2d 543. While in *Rosenberg* the court did state that a truck driver's intentional infliction of distress was outside the scope of his employment and therefore his employer would not be vicariously liable, in doing so the court relied on *Nelson v. Nuccio.* In that case, involving a policeman's threats of murder and subsequent murder of the plaintiff's son, the court held, not that a principal could never be liable for the intentional infliction of emotional distress by its agent, but that the

complaint failed to allege that the acts were committed while the policeman was on duty or otherwise acting within the scope of his employment. Indeed, in *Nelson* the court acknowledged that the city would have been liable if the acts had been within the scope of the policeman's employment. (*Nelson v. Nuccio* (1971), 131 Ill. App. 2d 261, 263, 268 N.E.2d 543.) Therefore, we cannot find that these cases stand for the proposition for which they are cited.

Having found that plaintiffs' complaint sufficiently alleged the Clinic's possible vicarious liability for CAT's allegedly tortious conduct, we must now consider the issues raised by the Clinic's cross-appeal relating to whether the complaint states any cause of action in tort. The first issue is whether the trial court properly found that the complaint stated a cause of action for intentional infliction of severe emotional distress. The elements of that tort are: (1) extreme and outrageous conduct, (2) intended to cause (or committed in reckless disregard of the probability of causing), (3) and causing, (4) severe emotional distress on the part of the plaintiff. Restatement (Second) of Torts §46 (1965); accord, *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765; *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373.

The only element that the Clinic contends is lacking here is the first, extreme and outrageous conduct. In *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765, our supreme court had occasion to consider the nature and content of this element in the same setting as here, that of debt collection. Noting that the plaintiff in *Public Finance* admitted owing the debt, the court found that the collection agency's conduct was not so extreme and outrageous as to constitute a basis for recovery under the theory alleged. (66 Ill. 2d 85, 91-94, 360 N.E.2d 765.) Except for a single impermissible act, the complaint reflected only a persistence in making telephone calls and a certain lack of sensitivity in making visits on the part of the collection agency. The court specifically noted that in cases permitting actions for severe emotional distress to proceed, the debtors had alleged "the use of abusive and vituperative language, shouting and railing at the debtor, repeated threats of arrest and ruination of credit, threats to appeal to the debtor's employer to endanger his employment and accusations of dishonesty." 66 Ill. 2d 85, 92, 360 N.E.2d 765.

■■ In the instant case, we note that the complaint does not unequivocally affirm or deny the existence of the debt. Nevertheless, and in any event, because so many of the allegations which the court specifically noted were absent from the complaint in *Public Finance* are present here, we find that plaintiffs have adequately stated a cause of action. Unlike the plaintiffs in *Public Finance*, plaintiffs have alleged not only a veritable multitude of telephone calls, but also the frequent use of profane, obscene, and abusive language therein. They have also alleged threats to

"embarrass" the purported debtor's husband with his employer, to garnish his wages, and to put him and the purported debtor in jail. Thus, the abusive and threatening language which the court in *Public Finance* repeatedly noted was absent from the complaint is present here. In addition, plaintiffs have alleged unwarranted communications with the purported debtor's husband at his place of employment and with the purported debtor's minor daughter. Similar allegations were noted by the court in *Bureau of Credit Control v. Scott* (1976), 36 Ill. App. 3d 1006, 1007, 345 N.E.2d 37, in finding that a cause of action for intentional infliction of severe emotional distress had been stated. We hold that the trial court properly found that count I of plaintiffs' complaint states a cause of action. Compare *Kelly v. Franco* (1979), 72 Ill. App. 3d 642, 391 N.E.2d 54 (dismissal affirmed on ground that conduct alleged constituted mere indignities, threats, and trivialities and therefore was not outrageous).

The next issue is whether the complaint states a cause of action under the Collection Agency Act (Ill. Rev. Stat. 1977, ch. 111, par. 2001 *et seq.*), which became effective on October 1, 1974. As has been noted, the Act consists of five distinct parts:

> "Sections 2 and 3 define terms and limit the class of persons covered by the Act. Sections 4 through 8 require persons within the regulated class to obtain certificates of registration and set forth the procedures and qualifications for certification. Section 9, the heart of the Act, prohibits the use of certain collection practices. The next five sections provide for the implementation and enforcement of the Act. Finally, section 16 amends the criminal code to make several collection agency activities illegal." Note, *The Illinois Collection Agency Act*, 1975 U. Ill. L.F. 441, 443.

Plaintiffs have alleged violations of the following sections of the Collection Agency Act: sections 9.02 (baseless threat of arrest or criminal prosecution), 9.05 (threat of communication with the debtor's employer without prior written notice), 9.06 (harassment of the debtor or his family), 9.07 (use of profane, obscene, and abusive language), 9.08 (threat of disclosure of the debtor's indebtedness to persons without a legitimate business need), and 9.10 (engaging in conduct intended to cause and causing mental or physical illness to the debtor or his family). (Ill. Rev. Stat. 1977, ch. 111, pars. 2014, 2017, 2018, 2019, 2020 and 2022, respectively.) Section 9 of the Act specifies each of these acts as an unlawful practice. Section 12 provides that the Director of the Department of Registration and Education may, after complaint, investigation, hearing, and a finding of the commission of any act proscribed in section 9, revoke or suspend the certificate required of all collection agencies by section 4 of the Act. Section 14 further states that "[t]he penalties provided by this Act shall not be

exclusive, but shall be in addition to all other penalties or remedies provided by law." (Ill. Rev. Stat. 1977, ch. 111, par. 2039.) Finally, section 16 of Public Act 78-1248 (1974 Ill. Laws 1242-43) amends the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 1—1 *et seq.*) by adding section 17—5 (deceptive collection practices) and by amending section 26—1 (disorderly conduct) to make harassing, annoying, or intimidating telephone calls (while attempting to collect a debt) a new element of the offense. (Ill. Rev. Stat. 1977, ch. 38, pars. 17—5, 26—1(a)(6).) Violation of either section is a business offense punishable by a fine not to exceed $3000.

While plaintiffs have sufficiently alleged the commission of acts proscribed as unlawful under the Act, absent from the Act is any provision for a private right of action to recover damages for such violations. Undeterred, plaintiffs cite six Illinois cases in which implied rights of action under constitutional or statutory provisions have been recognized. (See *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353 (private right of action for retaliatory discharge held to exist, though nothing in the Workmen's Compensation Act prohibited such discharge at the time); *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31, 230 N.E.2d 173, *cert. denied* (1968), 390 U.S. 949, 19 L. Ed. 2d 1140, 88 S. Ct. 1038 (Federal Safety Appliance Act); *Heimgaertner v. Benjamin Electric Nanufacturing Co.* (1955), 6 Ill. 2d 152, 128 N.E.2d 691 (Illinois Election Code); *Hoover v. May Department Stores Co.* (1978), 62 Ill. App. 3d 106, 378 N.E.2d 762 (Retail Installment Sales Act and an analogous Missouri statute); *Walinski v. Morrison & Morrison* (1978), 60 Ill. App. 3d 616, 377 N.E.2d 242 (article I, section 17 of the 1970 Illinois Constitution); *Rice v. Snarlin, Inc.* (1970), 131 Ill. App. 2d 434, 266 N.E.2d 183 (Consumer Fraud Act, later amended specifically to provide for private actions (see Ill. Rev. Stat. 1977, ch. 121½, par. 270a)).) From these cases, plaintiffs assert, at least five factors may be gleaned, some of which were found determinative in each of the six cases cited and all of which, plaintiffs contend, are present in the instant case. ■■ We agree. First, that the acts of collection harassment alleged contravene the public policy of this State, as expressed in the Collection Agency Act, is beyond question. Second, it is obvious that plaintiffs are within the class of persons the statute is designed to protect. Third, it is equally obvious that the injury allegedly suffered by plaintiffs is within the range of injuries the statute was designed to prevent. Fourth, the need for a civil action for damages under the statute is clear. The act contains no provision for compensating debtors for their injuries and therefore provides little incentive for them to seek enforcement of the Act. Although an aggrieved debtor may derive some psychological satisfaction from the suspension or revocation of a collection agency's certificate (Note, 1975 U.

Ill. L.F. 441, 455), or from the criminal prosecution of an offending agency, it seems unlikely that most debtors will initiate and pursue their complaints through all the steps in the administrative or criminal justice processes in the absence of any tangible reward. Finally, nothing in the Act indicates an intent to limit the remedies available to those, administrative or criminal, enumerated in the Act. Other statutes providing for such remedies have nevertheless been held to embrace implied civil rights of action (*e.g.*, *Hoover v. May Department Stores Co.* (1978), 62 Ill. App. 3d 106, 378 N.E.2d 762; *Rice v. Snarlin, Inc.* (1970), 131 Ill. App. 2d 434, 266 N.E.2d 183), and the Act itself manifests an intent contrary to exclusivity. (See section 14, Ill. Rev. Stat. 1977, ch. 111, par. 2039; compare *Teale v. Sears, Roebuck & Co.* (1976), 66 Ill. 2d 1, 4-6, 359 N.E.2d 473 (restrictive inference flowing from the language of the statute and from the existence of other civil and criminal remedies held to militate against implication of a right to recover damages for violation of the Age Discrimination Act).) Accordingly, we hold that a private right of action for damages may be founded on a violation of section 9 of the Collection Agency Act, and that count II of plaintiffs' complaint states a cause of action thereunder.

■■ The Clinic points out that by its terms the Act covers only collection agencies and "* * * does not apply to persons whose collection activities are confined to and are directly related to the operation of a business other than that of a collection agency, * * *." (Ill. Rev. Stat. 1977, ch. 111, par. 2005; see also pars. 2004 and 2006.) This argument misses the point. Obviously the Clinic is not directly subject to the Act, and therefore it need not acquire a certificate before it attempts to collect a debt, nor could it be directly liable under the Act. But if the Clinic hires a collection agency which, in the course of employment, commits a practice made unlawful under the Act, we see no reason why the Clinic cannot be vicariously liable for the commission of that particular tort on the same principles as any other. *Cf.* Restatement (Second) of Torts §874A, comments f and j (1979) (implied tort action should ordinarily be treated similarly to most closely analogous common law torts).

■■ The remaining issue is whether plaintiffs' prayer for punitive damages under the Collection Agency Act was properly not stricken. Punitive damages were not sought under count I, seeking recovery for intentional infliction of severe emotional distress, nor could they be. In the first explicit recognition of that tort in Illinois, the court stated "* * * that punitive damages cannot be sanctioned as an additional recovery in such an action. Since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive." (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 88, 174 N.E.2d 157.) However, the subject of punitive damages was more recently addressed by our supreme court in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, in which the court recognized an implied right

of action to recover damages for retaliatory discharge under the Workmen's Compensation Act. Noting that punitive damages may properly be awarded where the wrongful acts alleged are characterized by fraud, actual malice, deliberate violence or oppression, or wilful and wanton misconduct, and where an award will serve not just to punish the defendant but to deter the defendant and others from committing like offenses in the future, the court went on to hold that punitive damages may generally be awarded for tortious retaliatory discharge. (74 Ill. 2d 172, 186-87, 384 N.E.2d 353.) This the court held even though the defendant was already subject to liability for compensatory damages and the statute had been amended to provide for criminal sanctions in future cases, and even though exemplary damages were not recoverable for wrongful discharge at common law. (74 Ill. 2d 172, 384 N.E.2d 253.) However, the court went on to note that an award of punitive damages under the circumstances of that case was improper, since at the time of the plaintiff's discharge there was no statute or court decision providing that such conduct was unlawful or actionable. 74 Ill. 2d 172, 187-89, 384 N.E.2d 353.

■■ Reconciliation of the principles advanced in *Knierim* and *Kelsay* in the context of the case at bar presents a difficult task. The conduct complained of is characterized by wilfulness and oppression, but since that is the essence of the tort, this fact can cut both ways. Similarly, though the conduct complained of was unlawful when committed, under *Knierim* it could not have justified punitive damages, and under the Collection Agency Act it was not yet the subject of a civil action in tort. Moreover, the Collection Agency Act provides a deterrent in addition to compensatory damages and criminal sanctions, that of possible suspension or revocation of the offending collection agency's license. (Ill. Rev. Stat. 1977, ch. 111, par. 2037.) Yet it was the unlikelihood that existing criminal and administrative remedies would truly deter which led us to found a cause of action for damages on the statute; the same factor militates in favor of the availability of the additional sanction of punitive damages, particularly in view of the fact that criminal and administrative sanctions will not operate as against those who hired the collection agency and possibly sanctioned or directed the oppressive conduct. On balance we believe that punitive damages should be available for violations of section 9 of the Collection Agency Act, both generally and in the instant case.

This brings us to the next question, whether punitive damages could be awarded as against the Clinic, whose liability, if any, will be vicarious. Section 217C of the Restatement (Second) of Agency (1958) has been cited with approval or adopted by several courts in this State. (See *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509; *Easley v. Apollo Detective Agency* (1979), 69 Ill. App. 3d 920, 387

N.E.2d 1241; *Tolle v. Interstate Systems Truck Lines, Inc.* (1976), 42 Ill. App. 3d 771, 356 N.E.2d 625.) That section provides that vicarious liability for punitive damages should be limited to cases in which (a) the principal authorized the doing and the manner of the act; (b) the agent was unfit and the principal was reckless in employing him; (c) the agent was employed in a managerial capacity and was acting in the scope of employment; or (d) the principal or a managerial agent of the principal ratified or approved the act.

The Clinic argues that under this section it could not be vicariously liable for punitive damages on the facts alleged. Plaintiffs argue that the Clinic waived this argument by not including it in its motion to dismiss. However, the Clinic did contend that it could not be vicariously liable and that punitive damages were not authorized, which would seem sufficient to raise the question of whether it could be vicariously liable for punitive damages. Nevertheless, because plaintiffs failed to allege specific facts tending to bring their case within section 217C, but because that failure may have been due to the Clinic's failure to raise this argument more explicitly, in our view the prayer for punitive damages should have been stricken as against the Clinic, but with leave to amend.

In summary, the trial court erred in dismissing the complaint as to the Clinic on the ground that plaintiffs had failed to allege a sufficient basis for vicarious liability on the part of the Clinic; that portion of the trial court's order is reversed. The trial court correctly held that both counts I and II of the complaint state a cause of action; that portion of the court's order is affirmed. Finally, the prayer for punitive damages in count II, though generally proper, should have been stricken as to the Clinic, but with leave to amend; that portion of the court's order is reversed and remanded with directions.

Affirmed in part; reversed in part; and remanded with directions.

DOWNING and HARTMAN, JJ., concur.